## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## Tampa Division

**TIMOTHY TUCKER,**                              CASE NO.:
    *Plaintiff,*

**v.**

**UPSTART NETWORK, INC.,**
**EQUIFAX INFORMATION**
**SERVICES LLC, EXPERIAN**
**INFORMATION SOLUTIONS, INC.,**
**and TRANS UNION, LLC,**

    *Defendants,*

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.     Plaintiff, Timothy Tucker (hereinafter "Plaintiff" or "Tucker") brings this action against Defendants Upstart Network, Inc. ("Upstart"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Trans Union, LLC ("Trans Union") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

2.     Plaintiff further alleges violation of the Florida Consumer Collection Practices Act, Florida Statute §559.72 et. seq. (hereinafter "FCCPA") against Upstart.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

5.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Polk County, Florida.

## PARTIES

6.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Polk County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Florida Statute §559.55(8).

7.      Defendant Upstart is a California corporation registered to conduct business in the State of Florida with a principal place of business located at 2950 S. Delaware Street.

8.      Defendant Upstart is a "debt collector" within the meaning of Florida Statute §559.55(7).

9.      Upstart uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies" or "CRA's").

10.    These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

11.    Defendant Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.    Defendant Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13.    Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

**Long- Arm Jurisdiction**

14.    Florida's long-arm "appl[ies] to defendants committing tortious acts outside the state that cause injury in Florida." See Posner v. Essex Ins. Co., 178

F.3d 1209, 1217 (11th Cir. 1999). Accordingly, the long-arm statute confers personal jurisdiction over a nonresident defendant who is alleged to have committed a tortious act in Florida, which causes injury to a plaintiff. Id. at 1216. "[A] nonresident defendant may commit a tortious act within the state by electronic, written, or telephonic communication into Florida so long as the cause of action arises from such communication." See Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1321 (M.D. Fla. 2010).

15.    The purpose of the FCRA is to safeguard against the improper reporting of information on a credit report either by the credit reporting agency or by the furnisher of credit information. *See* Myers v. Bennett Law Offices, 238 F.3d 1068, 1074 (9th Cir. 2001) (reversing a dismissal for lack of personal jurisdiction on an FCRA claim while stating the "mental distress can only be felt where Plaintiffs' 'sensibilities' reside -that is, Nevada."). Numerous courts have found personal jurisdiction in FCRA cases where the plaintiff resides and was injured by an out-of-state defendant's actions. *See* Marcus Forbes v. Concord Advice, LLC et al., No. 8:19-cv-02980-VMC-CPT, Dkt. 73 at 16-18 (M.D. Fla. Apr. 21, 2020) (listing cases consistent with personal jurisdiction over nonresident defendants in FCRA cases).

16.    Long-Arm jurisdiction exists under the FCRA claims made against Defendants because Mr. Tucker resides in the area where the effect of the communications was felt.

17.    Additionally, specific jurisdiction exists over Upstart under Fla. Stat. 48.193(1)(a)(2) because it committed out-of-state acts, that are codified torts under the FCRA which have caused damage to Plaintiff in Florida.

18.    Personal jurisdiction exists over Upstart because Plaintiff lives in the forum where he was injured by its actions. *See* Koch v. Lake City Credit, LLC, 6:19-cv-667-Orl-41GJK, 2019 WL 3719457, at *5 (M.D. Fla. July 23, 2019) (citing InternetSols. Corp. v. Marshall, 39 So. 3d 1201, 1208 (Fla. 2010) (nonresidents can commit tortious acts in Florida by virtue of telephonic, electronic, or written communications into Florida). "[S]uits may be brought where a debtor receives a communication from a debt collector located elsewhere where the transmittal of those communications is claimed to have violated debt collection laws." *See* Alecca v. AMG Managing Ptnrs., LLC, No. 3:13-cv-163, 2014 WL 2987702, at *6 (M.D. Fla. Jul. 2, 2014) (quoting Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993).

19.    Accordingly, Defendant Upstart has created minimum contacts with this forum by virtue of their telephonic, electronic, or written communications into Florida which violated the FCRA.

**The FCRA**

20.    The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

21.    Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine

the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

22.    "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

23.    A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

24.    Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

25.    The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

26. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies were under no obligation to treat an identity theft claim any different than a regular dispute.

27. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

28. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). *See* 15 U.S.C. §§ 1681c-2(c)(2).

29.    In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

30.    "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

31.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

32.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency

8

receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

33.    In performing the reinvestigation, the FCRA requires that the credit reporting agency "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

34.    The FCRA also requires that the credit reporting agency notify the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

35.    The FCRA requirements are important because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

36.    If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a). If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

37.    A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

38.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

39.    The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

40.    The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

41.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

42.    The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C.S. § 1681i(a)(1)(A).

43.    If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

44.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

45.    Under the FCRA, the term "consumer report" generally refers to:

46.    any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

    a.    credit or insurance to be used primarily for personal, family, or household purposes;

    b.    employment purposes; or

    c.    any other purpose authorized under section 1681b of this title.

U.S.C. § 1681a(d)(1).

47.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein. National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform

48.     The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

49.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

50.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. *See* http://www.e-oscar.org/ (last accessed October 2, 2025).

51.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *See* https://www.e-oscar.org/gettingstarted  (last accessed October 2, 2025).

52.    The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

53.    If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

54.    The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. *See* https://www.e-oscar.org/gettingstarted  (last accessed October 2, 2025).

55.    Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

56.    Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." *See* https://www.transunion.com/data-reporting/support-teams    (last    accessed October 2, 2025).

**The FCCPA**

57.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See* LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

58.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." See Fla. Stat. § 559.72(9).

59.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." See Fla. Stat. §559.77(2).

60.    As a consumer, Mr. Tucker has a private right of action against Upstart pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

61.    On May 24, 2024, an identity thief used Plaintiff Timothy Tucker's identifying information to open an account and take out a loan with Defendant Upstart.

62.    Tucker discovered he was a victim of identity theft in December 2024 when he received letters attempting to collect on a debt associated with the Upstart account.

63.    When Tucker informed Upstart that he did not open the account, Upstart asked for personal identifying information to investigate. At the time, Tucker believed the information would be used to validate the fraudulent loan and declined.

64.    When Tucker discovered the fraudulent loan on his credit reports in April 2025, he filed an identity theft affidavit with the Federal Trade Commission (FTC), listing the Upstart account as fraudulent and that other fraudulent accounts had also appeared on his credit reports.

The Equifax Dispute

65.    Plaintiff sent dispute letters received by Equifax on May 11, 2025 and July 25, 2025 requesting the removal of numerous fraudulent items from his credit report. In these letters, Plaintiff identified himself as a victim of identity theft by including copies of his state-issued driver's license and his April 26, 2025 FTC identity theft affidavit.  Plaintiff also stated explicitly that every item disputed in his letters were added to his credit report without his consent.

66.    Despite Plaintiff's requests in his dispute letters to Equifax, one fraudulent Upstart tradeline and several fraudulent soft inquiries remain and were verified as accurate by Equifax as recently as September 8, 2025.

67.    Disputed tradeline listed as Upstart Loan Operations partial account number 8606 was verified by Equifax via dispute response letter on May 13, 2025; via investigation results purported to be complete by Equifax on May 29, 2025; and via Equifax's credit reports dated June 11, 2025 and September 8, 2025.

68.    Disputed soft inquiry listed as Upstart Network, Inc was verified by Equifax via dispute response on May 13, 2025, via investigation results purported to be complete by Equifax on May 29, 2025, and via Equifax's own credit reporting on June 11, 2025 and September 8, 2025.

69.    Despite verifying these fraudulent items as accurate, Equifax puzzlingly deleted similar soft inquiries listed under the names Upstart Network, Inc and Upstart/Finwise per Plaintiff's June 11, 2025 credit report.

70.    Without explanation, Equifax also repeatedly verified as accurate several fraudulent items disputed in Plaintiff's dispute letters, only to delete essentially the same items sometimes months later.

71.    A fraudulent soft inquiry from September 10, 2024 listed as Discover Financial disputed in both of Plaintiff's dispute letters was verified accurate by Equifax on May 13, 2025, May 29, 2025, June 11, 2025 and September 8, 2025, yet Equifax deleted several other similar soft inquiries listed under Discover Financial Services as early as June 11, 2025.

72.    Equifax verified as accurate two fraudulent OneMain soft inquiries disputed in Plaintiff's dispute letters, yet deleted an almost identical OneMain soft inquiry.

73.    Equifax verified as accurate two fraudulent soft inquiries from Republic Finance, LLC disputed in Plaintiff's dispute letters, yet deleted an almost identical soft inquiry from the same company.

74.    Other items from Plaintiff's dispute letters that were deleted by Equifax included soft inquiries from Charles Schwab Bank and Finance Maryland LLC. These items, along with the OneMain and Republic Finance LLC deletions, were verified as accurate via investigation results purported to be complete on May 29, 2025; and verified again in Plaintiff's credit report on June 11, 2025, only to be found deleted in Plaintiff's credit report on  September 9, 2025.

75.    Equifax failed to block several items disputed in Plaintiff's May 11 and July 25, 2025 dispute letters, including fraudulent soft inquiries from Capital One, Oportun/Pathward, Oportun, Inc., ComenityCapital/GoodSam, which were all verified by Equifax via dispute response on May 13, 2025, complete investigation results from Equifax on May 29, 2025, and Equifax's own credit reporting on June 11, 2025 and September 8, 2025.

76.    Equifax also failed to block several items disputed in Plaintiff's July 25, 2025 dispute letter, including a fraudulent hard inquiry from Upstart Loan Operations, verified by Equifax August 1 and September 8 of 2025; and fraudulent soft inquiries from Discover, Capital One, and Citi Cards CBNA, verified by Equifax July 31, August 1, and September 8 of 2025.

The Experian Dispute

77.    Plaintiff sent dispute letters received by Experian on May 9, 2025 and July 23, 2025 requesting the removal of numerous fraudulent items from his credit reports. In these letters, Plaintiff identified himself as a victim of identity theft by stating the fraudulent items were added without his consent; and by including

copies of his state-issued driver's license and his April 26, 2025 FTC identity theft affidavit.

78.    Out of the items Plaintiff disputed in his letters, one fraudulent Upstart tradeline and numerous fraudulent soft inquiries were verified accurate by Experian as recently as September 8, 2025.

79.    Disputed tradeline listed as Upstart Network Inc/Fin was verified by Experian on May 30 and June 4, 2025 via investigation result; verified by Experian via credit report on June 11, 2025, and a subsequent credit report on September 8, 2025.

80.    Disputed    soft    inquiries    listed    as    OneMain    and ComenityCapital/GDSMVS were verified by Experian on May 30 and June 4, 2025 via investigation result; then appeared modified by Experian with various inquiries omitted per Plaintiff's June 11 and September 8, 2025 credit reports.

81.    Disputed soft inquiries listed as Synchrony Financial and Chase HL were verified by Experian on May 30 and June 4, 2025 via investigation result; on June 11, 2025 via credit report; then appeared modified by Experian on September 8, 2025 with various inquiries omitted per Plaintiff's credit report.

82.    Disputed    soft    inquiries    listed    as    ConsumerInfo.com,    and DLX/Lendvia    were    verified    by    Experian    on    May    30    and    June    4,    2025    via investigation result; on June 11, 2025 via credit report; were deleted by Experian via investigation result on August, 19, 2025, only to appear on September 8, 2025

modified with random inquiries omitted without explanation per Plaintiff's credit report.

83.    Disputed soft inquiries from Discover were deleted by Experian via investigation result on August, 19, 2025, only to appear on September 8, 2025 modified with various inquiries omitted per Plaintiff's credit report.

84.    Disputed soft inquiries listed as FNB Omaha were verified by Experian on May 30 and June 4, 2025 via investigation result; then appeared modified by Experian with one inquiry date omitted on June 11, 2025 via credit report, only to be deleted by Experian via investigation result on August 18, 2025.

85.    A disputed soft inquiry from DMI Financial Inc was verified by Experian on May 30 and June 4, 2025 via investigation result; verified by Experian via credit report on June 11, 2025, and a subsequent credit report on September 8, 2025.

86.    Disputed soft inquiries listed as Santander Bank NA, IR/Blue Front Financial, Clarity/Credit Fresh, Clarity/Feb-Opplons, Clariy/CBW/Credit Fresh, IR/Priority Plus Finance, Credit9LLC, Capital One, and Republic Finance LLC were verified by Experian on May 30 and June 4, 2025 via investigation result; on June 11, 2025 via credit report, only to be deleted by Experian via investigation result on August 19, 2025.

87.    Disputed soft inquiries listed as JPMCB Card, IR/Simple Path Financial, and Country Door/DMS were verified by Experian on May 30 and June

4, 2025 via investigation result; on June 11, 2025 via credit report; then were deleted by Experian via credit report on September 8, 2025.

The Trans Union Dispute

88.    Plaintiff sent dispute letters received by Trans Union on May 9, 2025 and July 25, 2025 requesting the removal of fraudulent items from his credit reports. In these letters, Plaintiff identified himself as a victim of identity theft by stating the fraudulent items were added without his consent; and by including copies of his state-issued driver's license and his April 26, 2025 FTC identity theft affidavit.

89.    Despite his efforts, numerous fraudulent items from Tucker's identity theft remain and were verified by Trans Union as recently as September 8, 2025, including a fraudulent tradeline from the Upstart account created by Tucker's identity thief.

90.    A disputed tradeline listed as Upstart/Finwise account FW436 was verified by Trans Union on May 14, 2025 via dispute response; on May 31, 2025 via investigation results purported to be complete; then was modified by Trans Union to show a zero balance per credit reports on June 11, 2025 and September 8, 2025.

91.    Numerous disputed soft inquiries listed as Upstart Network Inc, Guru Finance Group LLC, FB&T/CrdtShop, Chase, IR/United Financial Network, Advantage 1st Financial LLC, Kuber Financial, IR/iMerge LLC dba iMerg, IR/Unifi Funding, IR/Credit Join, IR/Bliss Financial, IR/Rocketship Financial Corp,

IR/Smart Money Capital, IR/Simple Lending LLC, IR/Lift Lending LLC, IR/Blue Front Financial dba Ladder Loans, IR/ReserveMyLoan, BHG Financial, One Capital Lending, Republic Finance, Republic BankNetCredit, Capital One, and Upgrade were verified by Trans Union on May 14, 2025 via block refusal; on June 11, 2025 via credit report; July 29, 2025 via a second block refusal; and September 8, 2025 via credit report.

92.    Disputed soft inquiries listed as FinwiseUpstart and Barclays Bank Delaware were verified by Trans Union on May 14, 2025 via block refusal; June 11, 2025 via credit report; were purported to be deleted by Trans Union on August 18, 2025 via investigation results, only to reappear verified by Trans Union as accurate on September 8, 2025.

93.    Disputed soft inquiries listed as Clarity Capital Solutions LLC and RPR Prop Hold dba Private Us Loans were verified by Trans Union on May 14, 2025 via block refusal; modified to omit one inquiry on June 11, 2025 via credit report; verified via a second block refusal on July 29, 2025; and verified via credit report on September 8, 2025.

94.    Disputed soft inquiries from IR/Propriety Plus Finance, Elevate 1 Financial LLC,  were verified by Trans Union on May 14, 2025 via block refusal; modified to omit one inquiry on June 11, 2025 via credit report; and verified via a second block refusal on July 29, 2025, only to be deleted from Plaintiff's credit report as confirmed on September 8, 2025.

95.     Disputed soft inquiries from DebtHunch were verified by Trans Union on May 14, 2025 via block refusal; on June 11, 2025 via credit report; July 29, 2025 via a second block refusal; then modified to omit one of the soft inquiries per Plaintiff's September 8, 2025 credit report.

96.     Disputed soft inquiries from T-Mobile were verified by Trans Union on May 14, 2025 via block refusal; modified to omit one inquiry on June 11, 2025 via credit report; only to be verified via a second block refusal on July 29 and September 8, 2025 via credit report showing Trans Union had added back the omitted inquiry.

97.     A disputed soft inquiry listed as Granite Bay Acceptance C was verified by Trans Union on May 14, 2025 via block refusal; modified to include a new inquiry date on June 11, 2025 via credit report; verified via a second block refusal on July 29, 2025; and modified again on September 8, 2025 via credit report to include another new inquiry date.

98.     Disputed soft inquiries listed as Timothy Tucker via TUCI- Lending Tree were verified by Trans Union on May 14, 2025 via block refusal; modified to omit one inquiry on June 11, 2025 via credit report; verified via a second block refusal on July 29, 2025; and modified again on September 8, 2025 via credit report to omit 20 more inquiries.

99.     Disputed soft inquiries listed as WalletHub were verified by Trans Union on May 14, 2025 via block refusal; modified to omit all previous inquiries on June 11, 2025 via credit report; verified via a second block refusal on July 29,

2025; and modified again to omit all previous inquiries on September 8, 2025 via credit report.

100.    Upon information and belief, at least one of the CRA Defendants provided Defendant Upstart with notice of the above-described dispute letters from Plaintiff. In response, Upstart failed to block or otherwise investigate Plaintiff's disputes.

101.    Similarly, Defendants Equifax, Experian, and Trans Union did not conduct a reasonable investigation but instead relied exclusively on furnishers, including Upstart, to determine the outcome of the investigation.

102.    As a result, Plaintiff suffered concrete injuries, including the continued publication of false identifying information, emotional distress, reputational harm, and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. *See* Coulter v. SageStream, LLC, 501 F.Supp.3d 298 (2020); Norman v. Trans Union, LLC, 669 F.Supp.3d 351 (2023); Chaitoff v. Experian Information Solutions, Inc., 79 F.4th 800 (2023).

## COUNT I – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST UPSTART

103.    Plaintiff incorporates by reference paragraphs 1, 2, 4, 5, 7-10, 14-69, 76-79, 88-92, 100, and 102 as if fully stated herein.

104.    At all relevant times to this action, Upstart is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

105.    Upstart violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

106.    Specifically, Upstart continued to report the fraudulent loan account on Plaintiff's credit report after being placed on notice in late 2024 that the account is fraudulent, and Plaintiff was not responsible for the account.

107.    "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." See Fla. Stat. §559.77(2) (emphasis added).

108.    As a result of Defendant's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Defendant's erroneous credit reporting.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Upstart in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees,

litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST UPSTART

109.    Plaintiff incorporates by reference paragraphs 1, 2, 4, 5, 7-10, 14-69, 76-79, 88-92, 100, and 102 as if fully stated herein.

110.    Upstart is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

111.    Upstart violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute when it failed to review all relevant information provided by the credit reporting agencies.

112.    As a result of Upstart's violations of the FCRA, Plaintiff has been damaged.

113.    Plaintiff's damages include damages for mental and emotional distress associated with the Upstart account remaining on his credit reports following his disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

114.    Upstart negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

115.    Additionally, Upstart committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

116.   Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

117.   Plaintiff prays this Honorable Court to enter the following relief against Upstart in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX

118.   Plaintiff incorporates by reference paragraphs 1, 4, 5, 11, 14-56, 61-76, 101, and 102 as if fully stated herein.

119.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

120.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

121.   During the relevant timeframe, Equifax received Plaintiff's dispute letters which requested a block of the Upstart account and inquiries related to his identity theft.

122.   Plaintiff disputed the Upstart account and fraudulent inquiries on his Equifax credit report, identified himself, advised Equifax of the accounts being opened fraudulently, furnished Equifax with a copy of the FTC identity theft report and requested that Equifax block the fraudulent information.

123.    In response to his dispute, Equifax continued to report the fraudulent items and refused to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

124.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

125.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

126.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

127.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 11, 14-56, 61-76, 101, and 102 as if fully stated herein.

128.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

129.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

130.    During the relevant time frame, Equifax received Plaintiff's dispute letters which requested that the fraudulent Upstart account and inquiries be removed from his credit file.

131.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

132.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

133.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

134.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

135.    WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

136.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 11, 14-56, 61-76, 101, and 102 as if fully stated herein.

137.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

138.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

139.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

140.    After receiving Plaintiff's dispute letters, Equifax was placed on notice that the Upstart account and inquiries were fraudulent, yet Equifax continued to include the fraudulent items in Plaintiff's credit file.

141.   Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

142.   In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

143.   As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EXPERIAN

144.   Plaintiff incorporates by reference paragraphs 1, 4, 5, 12, 14-56, 77-87, 101, and 102 as if fully stated herein.

145.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

146.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

147.    During the relevant timeframe, Experian received Plaintiff's dispute letters which requested a block of the Upstart account.

148.    Plaintiff disputed the fraudulent Upstart account and inquiries on his Experian credit report, identified himself, advised Experian of the account being opened fraudulently, furnished Experian with a copy of the identity theft police report, and requested that Experian block the fraudulent information.

149.    In response to his disputes, Experian continued to report the tradelines.

150.    Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

151.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

152.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

153.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i AGAINST EXPERIAN

154.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 12, 14-56, 77-87, 101, and 102 as if fully stated herein.

155.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

156.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

157.    During the relevant time frame, Experian received Plaintiff's dispute letters which requested that the fraudulent Upstart account and inquiries be removed from his credit file.

158.   Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

159.   Additionally, Experian unreasonably relied on information provided by Upstart, when readily verifiable information was provided by Plaintiff in the disputes placing Experian on notice that Upstart's credit information was inaccurate and unreliable.

160.   Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

161.   Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

162.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

163.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 12, 14-56, 77-87, 101, and 102 as if fully stated herein.

164.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

165.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

166.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

167.    After receiving Plaintiff's dispute letters, Experian was placed on notice that the Upstart account and inquiries were fraudulent, yet Experian continues to include the fraudulent items in Plaintiff's credit file.

168.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

169.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

170.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file,

damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST TRANS UNION

171.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 13, 14-56, 88-99, 101, and 102 as if fully stated herein.

172.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

173.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

174.    During the relevant timeframe, Trans Union received Plaintiff's dispute letters which requested a block of the fraudulent Upstart account and inquiries.

175.    Plaintiff disputed the fraudulent Upstart account and inquiries on his Trans Union credit report, identified himself, advised Trans Union of the account

being opened fraudulently, furnished Trans Union with a copy of the FTC identity theft report, and requested that Trans Union block the fraudulent information.

176.   In response to his disputes, Trans Union continued to report the tradelines.

177.   Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

178.   Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

179.   Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

180.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages,

punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

181.    Plaintiff incorporates by reference paragraphs 1, 4, 5, 13, 14-56, 88-99, 101, and 102 as if fully stated herein.

182.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

183.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

184.    During the relevant time frame, Trans Union received Plaintiff's dispute letters which requested that the fraudulent Upstart account and inquiries be removed from his credit file.

185.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

186.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

187.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

188.  As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

189.  Plaintiff incorporates by reference paragraphs 1, 4, 5, 13, 14-56, 88-99, 101, and 102 as if fully stated herein.

190.  At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

191.  At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

192.  Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

193.   After receiving Plaintiff's dispute letters, Trans Union was placed on notice that the Upstart account and inquiries were fraudulent, yet Trans Union continued to include the fraudulent account and related inaccurate information in Plaintiff's credit file.

194.   Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

195.   In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

196.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

197.   Plaintiff demands a trial by jury on all issues so triable.

Dated: November 18, 2025

*Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*